IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES

v.

ALFRED CHEESE,
*Defendant*.

Criminal Case No. ELH-98-259 -2

**MEMORANDUM**

In 1999, Alfred Cheese was convicted by a jury of one count of conspiracy to distribute

heroin, cocaine, and cocaine base ("crack"), in violation of 21 U.S.C. § 846, and two counts of

possession of a firearm after conviction of a felony, in violation of 18 U.S.C. § 922(g)(1).  On

March 14, 2000, Judge Benson E. Legg sentenced Cheese to concurrent terms of life

imprisonment as to each of the three counts. The convictions and sentences were affirmed by the

Fourth Circuit in a consolidated appeal that also involved several co-defendants.  *See United

States v. Johnson*, 26 F. App'x 111 (4th Cir. 2001), *cert. denied*, 535 U.S. 949 (2002).  Judge

Legg subsequently denied Cheese's motion for post-conviction relief under 28 U.S.C. § 2255,

*see* ECF 553 & 554, and Cheese's appeal from that decision was dismissed.  *See United States v.

Cheese*, 177 F. App'x 316 (4th Cir. 2006).  Thereafter, Cheese filed a motion for reduction of

sentence, pursuant to 18 U.S.C. § 3582(c)(2) ("First Sentence Reduction Motion") (ECF 615).

Judge Legg denied the First Sentence Reduction Motion, *see* ECF 660, 671, 699, which was

affirmed on appeal.  *See United States v. Cheese*, 384 F. App'x 245 (4th Cir. 2010).

Cheese subsequently filed four motions that are now pending before the Court: a "Motion

for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)" ("Second Sentence Reduction

Motion") (ECF 777); a "Motion for the Clarification Regarding the Courts Order/Reasoning for Denying Petitioners [sic] Motion to Suppress Evidence seized at 1215 Sugarwood Circle and the Courts [sic] finding Existence of Probable cause to believe the Vehicle linked to Petitioners was Forfeitable Contraband" ("First Clarification Motion") (ECF 779); another "Motion for Clarification" ("Second Clarification Motion") (ECF 794); and a "Status Motion" (ECF 800), which simply asks the Court for an update as to the status of the other three motions.

The government has not filed a response to any of the motions. However, neither a response nor a hearing is necessary, because the motions can readily be resolved on the basis of the record. *See* Local Rule 105.6. Because Judge Legg was unable to rule on these matters before his retirement, the case has been reassigned to me. My rulings follow.

### A. Second Sentence Reduction Motion

In the Second Sentence Reduction Motion, Cheese asserts that his sentence should be reduced by virtue of retroactive application of amendments to the United States Sentencing Guidelines, *see* U.S.S.G., Amendments 748 (eff. Nov. 1, 2010), 750 (eff. Nov. 1, 2011), and 759 (eff. Nov. 1, 2011), which were adopted in connection with the enactment of the Fair Sentencing Act of 2010 ("FSA"), Pub. L. 111-220, 124 Stat. 2372 (enacted Aug. 3, 2010). The purpose of the FSA and the related amendments to the guidelines was to partially alleviate the so-called "crack vs. powder disparity," by which defendants who were convicted of a drug offense involving a given amount of cocaine base (a.k.a. "crack") were exposed to substantially higher guidelines sentences and statutory minimum sentences than defendants convicted of offenses involving the same amount of powder cocaine. *See United States v. Bullard*, 645 F.3d 237, 245 & n.4. (4th Cir.), *cert. denied*, 132 S. Ct. 356 (2011). The FSA lowered the disparity but did not

eliminate it.  *Id.*  The disparity now corresponds to a weight ratio of approximately 18:1 (*i.e.*, it takes approximately 18 times as much powder cocaine as crack to trigger a given statutory minimum sentence or guidelines base offense level); under prior law, the ratio was 100:1. With respect to the Sentencing Guidelines, the reduction of the crack/powder disparity was accomplished by amending the "Drug Quantity Table" in U.S.S.G. § 2D1.1(c), which establishes the base offense levels for conviction of an offense involving given quantities of any particular controlled substance.[1]  In Amendment 759, the United States Sentencing Commission made the amendments to the Drug Quantity Table eligible for retroactive application via resentencing, pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10.

Section 3582(c)(2) is a limited exception to the ordinary rule that a sentence of imprisonment is a final judgment that cannot be modified after it has been imposed.  In pertinent part, the statute provides that, "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," the court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, *if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*."  18 U.S.C. § 3582(c)(2) (emphasis added).  A sentence may be modified pursuant to § 3582(c)(2) upon motion of the defendant or the Bureau of Prisons, or by the court on its own motion.  *Id.*

The "applicable policy statements" of the Sentencing Commission to which § 3582(c)(2) refers are collected in U.S.S.G. § 1B1.10.  *See United States v. Stewart*, 595 F.3d 197, 200 (4th

---

[1] Before Congress enacted the FSA, the Sentencing Commission had taken some steps towards reducing the crack versus powder disparity by a prior amendment to the Sentencing Guidelines.  *See* U.S.S.G., Amendment 706 (eff. Nov. 1, 2007).  This amendment to the guidelines was the subject of Cheese's First Sentence Reduction Motion, discussed above.

Cir. 2010).  Under § 1B1.10, only certain specifically enumerated amendments to the guidelines are eligible for retroactive application; as noted, the amendments to the Drug Quantity Table contained in Amendment 750 are among the "covered" amendments.  U.S.S.G. § 1B1.10(c). However, the following policy statement is pertinent here: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . a[ ] [covered] amendment . . . does not have the effect of lowering the defendant's applicable guideline range."    U.S.S.G  § 1B1.10(a)(2)(B).    Further,  the Application Notes to § 1B1.10 explain that the foregoing policy statement applies where a covered amendment "is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g.*, a statutory mandatory minimum term of imprisonment)." U.S.S.G. § 1B1.10, Application Note 1(A).  As I will explain, Mr. Cheese's case comes within the exclusion stated in § 1B1.10(a)(2)(B), rendering him ineligible for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2).

The record of conviction indicates that the Second Sentence Reduction Motion is barred under U.S.S.G. § 1B1.10(a)(2)(B) for two reasons, each of which is independently sufficient. First, the sentence of life imprisonment as to the narcotics distribution conspiracy charge (which was Count Three of the indictment) was a statutory mandatory minimum term of imprisonment imposed pursuant to 21 U.S.C. § 846(b).  Accordingly, the life sentence was not based on a sentencing guidelines calculation.  Second, even if the sentence had been based on the sentencing guidelines, the applicable guidelines sentence was a life sentence due to application of the

"murder cross-reference" of U.S.S.G. § 2D1.1(d)(1).  Because the Drug Quantity Table had no impact on the applicable guidelines sentence, Cheese is not eligible for resentencing.

With respect to the sentence and the applicable sentencing guidelines, Judge Legg stated the following at the sentencing hearing, Transcript at 4-5 (ECF 463) (emphasis added):

> *Because of the notice of enhanced sentence that the government filed pretrial, and because of Mr. Cheese's felony convictions, the sentence that must be imposed is a life sentence*, meaning that, in a real sense, *the intermediate computations found in paragraphs 72 through 80* [*of the Pre-Sentence Report*] *calculating the offense level*, and in the criminal history computation section resulting in paragraph 122 with a criminal history computation of roman numeral VI *are irrelevant because they do not contribute to the ultimate sentence*.
>
> They are relevant, however, in the sense that they are determinations that need to be made.  Because there are no objections, I hereby adopt the recommendations and findings of Mr. Mebane of the United States Probation Office.
>
> I have independently reviewed these paragraphs and conclude that they are indeed correct as calculated.

The "notice of enhanced sentence" to which Judge Legg referred was the "Government's Joint Information on Enhanced Penalties Pursuant to 21 U.S.C. §§ 841(b) and 851(a)" (ECF 164).  In that document, the government gave notice, as required, that it intended to seek a statutory mandatory minimum term of life without parole, under the enhanced penalties provided in 21 U.S.C. § 841(b), if Cheese was convicted at trial of a narcotics offense.  Under 21 U.S.C. § 841(b)(1)(A), if a defendant commits a narcotics distribution offense involving certain threshold amounts of narcotics after he already has obtained "two or more prior convictions for a felony drug offense [that] have become final, such person shall be sentenced to a mandatory term of life imprisonment."  The Pre-Sentence Report ("PSR"), which Judge Legg expressly adopted, indicates that Cheese had several prior qualifying convictions for drug distribution.  Thus, as

Judge Legg aptly noted, the sentencing guidelines calculations were "irrelevant because they do not contribute to the ultimate sentence." Transcript at 5. Because Cheese's life sentence was mandated by statute, the subsequent amendments to the sentencing guidelines do not affect his sentence.

To be sure, one effect of the FSA was to raise the threshold amount of crack that qualifies, in combination with two or more prior felony drug offense convictions, for the mandatory life term under 21 U.S.C. § 841(b)(1)(A). At the time Cheese was sentenced, the threshold was 50 grams; under the FSA, it is 280 grams. However, the amended *statutory* sentencing enhancement provisions of the FSA (as opposed to the related amendments to the sentencing guidelines) do not apply retroactively to this case, given that Cheese was sentenced over ten years before the FSA was enacted. *See Dorsey v. United States*, 132 S. Ct. 2321, 2331 (2012) (holding that "the Fair Sentencing Act's more lenient penalties . . . apply to those offenders whose crimes preceded August 3, 2010, *but who are sentenced after that date*") (emphasis added).

Moreover, even if the FSA's amendments to the statutory enhanced sentences applied here, the record makes abundantly clear that the enormous quantity of narcotics involved in Cheese's conviction would have triggered a mandatory life sentence even under the current 280-gram threshold. The jury convicted Cheese of conspiracy to distribute cocaine, crack, and heroin. *See* Verdict (ECF 356). Although the jury was not asked to make an explicit finding as to the amount of narcotics involved, the charged conspiracy involved a substantial and wide ranging drug distribution organization that operated over the course of several years and in which Cheese played a leadership role. According to the government's sentencing memorandum (ECF

376 at 20), the evidence at trial established that, "in the last 2 ½ years of the conspiracy [the]
organization sold about three kilos of crack per week," and this evidence "was abundantly
corroborated by many witnesses." According to the PSR, Cheese's "criminal activity involved
greater than 1.5 kilograms of cocaine base." PSR ¶ 72. This, in combination with Cheese's prior
convictions, was more than sufficient to trigger a mandatory life sentence under 21 U.S.C.
§ 841(b)(1)(A), either before or after enactment of the FSA.[2]

Even if the statutory mandatory minimum did not apply, however, Cheese would still be
ineligible for relief under § 3582(c)(2). This is because, as noted, the applicable sentence under
the guidelines was also a life sentence, and it was not based on the quantity of drugs pertaining to
his conviction. Rather, as the PSR that Judge Legg adopted makes clear, the murder cross-
reference applied to his case. Under U.S.S.G. § 2D1.1(d)(1), then as now, if in the course of a
narcotics distribution conspiracy a victim is killed under circumstances that would constitute
murder under 18 U.S.C. § 1111 if the killing were subject to federal criminal jurisdiction, the
base offense level is determined by the homicide sentencing guidelines. In this case, the PSR

---

[2] Cheese's trial predated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the
Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the
penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and
proved beyond a reasonable doubt." *Id.* at 490. Following *Apprendi*, "in order to authorize the
imposition of a sentence exceeding the maximum allowable without a jury finding of a specific
threshold drug quantity, the specific threshold quantity must be treated as an element of an
aggravated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond
a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc)
(footnote omitted). However, *Apprendi* does not apply retroactively. *See, e.g.*, *United States v.
Sanders*, 247 F.3d 139, 146 (4th Cir. 2001). Moreover, on direct appeal from Cheese's
conviction (by which time *Apprendi* had been decided), the Fourth Circuit rejected Cheese's
plain error challenge to his sentence based on *Apprendi* because he could not "demonstrate the
*Apprendi* error in his sentence on [the conspiracy count] affected his substantial rights," given
that he would have been subject to a life sentence under the guidelines for that offense and was
exposed to life sentences as to his firearms convictions. *United States v. Johnson*, 26 F. App'x
111, 117 (4th Cir 2001).

indicates that the applicable guideline was the guideline for first-degree murder, *see* U.S.S.G. § 2A1.1, which establishes a base offense level of 43, the maximum possible level.  After all adjustments, Cheese's total combined offense level remained a 43, and the applicable guidelines sentence for an offense level of 43 is life imprisonment, regardless of criminal history category. The applicability of the murder cross-reference to this case was also the basis for Judge Legg's denial of Cheese's First Sentence Reduction Motion.  *See* ECF 671.

In sum, Cheese is not eligible for a reduction in sentence under 18 U.S.C. § 3582(c)(2). Accordingly, I will deny the Second Sentence Reduction Motion.

## B.  First Clarification Motion

In Cheese's First Clarification Motion, filed in November 2011, he stated that, on September 9, 1999, in open court, Judge Legg orally denied his pretrial motions seeking suppression of evidence regarding a search of 1215 Sugarwood Circle and a warrantless search of a vehicle that was "linked" to him.  He asserted that, in denying the motions, Judge Legg indicated that he "would place [his] reasons for doing so on the record at a later time,"  but that Cheese is "unable to locate in the record, where the court actually [sic] made determinations for denying the . . . motions."  He asked the Court to indicate the portion of the record that contains Judge Legg's reasoning for denial of his suppression motions, because he wishes to pursue "post conviction remedies" as to these issues.

I am unable to scour the record of the months-long trial to determine where Judge Legg stated the reasons for his ruling on the record.  However, in Mr. Cheese's direct appeal of his convictions, the Fourth Circuit specifically considered and affirmed Judge Legg's rulings as to

the suppression motions.  *See United States v. Johnson*, 26 F. App'x 111, 118-19 (4th Cir. 2001).

The Fourth Circuit said, *id.*:

> Cheese offers two related assignments of error, which we find to be meritless.  First, Cheese claims the district court erred in failing to suppress evidence seized from his vehicle based on information the Government obtained from a confidential source, inasmuch as that information failed to provide probable cause that his vehicle constituted forfeitable contraband, and was thus subject to a warrantless search.  Our review of the pre-trial suppression hearing indicates the Government provided the district court with evidence both corroborating the source's statement and confirming its reliability as required by *Illinois v. Gates*, 462 U.S. 213, 233-34 (1983).[1]  Accordingly, we find the district court's suppression determination is not erroneous.
>
> Similarly, we find the district court did not err in declining to suppress evidence seized during the subsequent search of 1215 Sugarwood, a residence to which Cheese was linked through utility bills for that address seized from his vehicle.  On appeal, Cheese contends that the items sought in the search warrant for that property could not reasonably have been expected to be found there.  However, contrary to Cheese's assertion on appeal, the schedule of items sought included indicia of ownership or occupancy, including items linking Cheese to the residence.  Accordingly, we find this assignment of error to be meritless as well.

In a footnote, the Fourth Circuit added, 26 F. App'x at 119 n.5:

> In particular, the Government substantiated the source's track record for reliability and the fact that Cheese had previously been stopped with a firearm and large sum of cash, the hallmarks of drug trafficking, *see United States v. Kennedy*, 32 F.3d 876, 882-83 (4th Cir. 1994); *United States v. Thomas*, 913 F.2d 1111, 1115 (4th Cir. 1990), in the vehicle.

### C.  Second Clarification Motion

In Cheese's Second Clarification Motion, he asks the Court to "clarify and/or direct [him] to the section of the Pre-Sentence Investigation Report, the sentencing hearing or any other record this court established making the determination that petitioner had (3) prior felony convictions and that those prior convictions met the definition of predicate offenses defined in 18 U.S.C. § 924(e)," so as to support the two concurrent life sentences imposed for two convictions

for possession of a firearm after conviction of a felony, under 18 U.S.C. § 922(g)(1) (Counts Seven and Eight).

Under 18 U.S.C. § 922(g)(1), a person who has previously been convicted of "a crime punishable by imprisonment for a term exceeding one year" is prohibited from possessing a firearm. Ordinarily, a conviction for this offense is punishable by a maximum sentence of ten years' imprisonment. *See* 18 U.S.C. § 924(a)(2). However, under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), a person convicted of violating § 922(g)(1) who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a mandatory minimum sentence of fifteen years' imprisonment, and is exposed to the potential of a life sentence.

The PSR concluded that Cheese had "four prior felony convictions for controlled substance offenses," which rendered him a "career criminal" under the career offender sentencing enhancement provisions of the guidelines. PSR ¶ 122 (citing U.S.S.G. § 4B1.1). The definition of a "serious drug offense" under the ACCA, *see* 18 U.S.C. § 924(e)(2)(A), encompassed any crime that was a "controlled substance offense" under the career offender guidelines. *See* U.S.S.G. § 4B1.2(b). Therefore, this determination in the PSR, which Judge Legg expressly adopted, established that Cheese had sufficient qualifying prior predicate convictions to be exposed to life sentences under the ACCA for his firearms convictions under 18 U.S.C. § 922(g)(1). *See, e.g.*, *United States v. Bynum*, 669 F.3d 880, 885-86 (8th Cir. 2012) (observing that, while "the ACCA's definition of 'serious drug offense' is 'not identical to the definition[ ] of . . . "controlled substance offense"' given in [U.S.S.G.] § 4B1.2," this is because the ACCA's term is more "expansive" than the sentencing guidelines' term) (citation omitted).

Accordingly, the Second Sentence Reduction Motion will be denied, and the two Clarification Motions have been resolved.  It follows that the Status Motion is now moot.  A separate Order implementing my rulings follows.

Date:   April 16, 2013                        _____/s/_____
                                              Ellen Lipton Hollander
                                              United States District Judge