IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALFRED CHEESE, III<br>*Defendant*. | Criminal Case No. ELH-98-259 |

**MEMORANDUM OPINION**

This Memorandum Opinion resolves the "Motion For Imposition Of A Reduced Sentence Pursuant to Section 404 of The First Step Act" (ECF 903, the "Motion"), filed by counsel on behalf of defendant Alfred Cheese, III. *See* First Step Act of 2018 ("2018 FSA" or the "Act"), Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The Motion is supported by several exhibits.

The case originated in 1998, when the government lodged charges against a host of defendants involved in drug trafficking in Baltimore. Several defendants proceeded to a jury trial in 1999 at which Judge Benson E. Legg presided. As to Cheese, the jury convicted him of one count of conspiracy to distribute heroin, cocaine, and cocaine base ("crack"), in violation of 21 U.S.C. § 846, and two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On March 14, 2000, Judge Legg sentenced Cheese to concurrent terms of life imprisonment as to each count. The convictions and sentences were affirmed by the Fourth Circuit in a consolidated appeal pertaining to several codefendants. *See United States v. Johnson*, 26 F. App'x 111 (4th Cir. 2001) (per curiam), *cert. denied*, 535 U.S. 949 (2002).

In the Motion, Cheese seeks a sentence of time served, which he claims is equivalent, with good-time credit, to a sentence of 25 years. ECF 903 at 2, 6. The government opposes the Motion (ECF 905), and Cheese has replied. ECF 906.[1]

Due to Judge Legg's retirement, the case was reassigned to me. No hearing is necessary to resolve the Motion.[2] For the reasons that follow, I shall grant the Motion, in part. In particular, I shall reduce the total sentence to 28 years of imprisonment.

## I.     Factual and Procedural Background

In 1998, prosecutors charged ten defendants in a multi-count indictment alleging a conspiracy to distribute crack cocaine, cocaine, and heroin. ECF 1. Then, on August 18, 1999, Cheese and fifteen others were charged in an 18-count Second Superseding Indictment. ECF 306. Four counts related to Cheese: conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846 (Count Three), and three counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Counts Seven, Eight, and Eleven).

The drug trafficking organization ("DTO"), of which Cheese was a part, was known as the "Nickel Boys." It operated in Baltimore City. The DTO was very violent, particularly with respect to rival drug dealers and potential witnesses. As the Fourth Circuit observed on appeal: "The volume and profit of the organization was matched by its ruthlessness . . . ." *Johnson*, 26 Fed. App'x at 115. Indeed, codefendants Antonio Howell, Dwuan Dent, and Oloyede Johnson were charged in Count One with Conspiracy to Commit Murder in Aid of Racketeering, in violation of

---

[1] The defendant does not seek a reduction of the 10-year term of supervised release. *See* ECF 903 at 2.

[2] Because a hearing is not necessary, I need not decide whether the Court is entitled to hold a plenary resentencing.

18 U.S.C. § 1959(a)(5), and in Count Two with Murder in Aid of Racketeering, under 18 U.S.C. § 1959(a)(1). *See* ECF 910, ¶¶ 4, 5, 6. Notably, however, Cheese was not charged with those offenses.

Prior to trial, six defendants pled guilty to the conspiracy charged in Count Three. Charges were dismissed against four defendants. ECF 903 at 3. Cheese was one of six defendants who elected to proceed to trial. As to Cheese and three others, the government filed sentencing enhancement notices under 21 U.S.C. § 851 (the "§ 851 Notice"). The § 851 Notice as to Cheese stated that he had at least two prior convictions for felony drug offenses. *See* ECF 910 (Presentence Report or "PSR"), ¶ 137.[3] As a result, although the statutory maximum sentence for Count Three was twenty years, on conviction the statute permitted a maximum sentence of thirty years – a ten-year enhancement – based on the § 851 Notice. *See Johnson*, 26 Fed. App'x at 116.

Trial began on September 13, 1999. *See* Docket. Some members of the conspiracy testified for the government at the trial. During the trial, prosecutors introduced evidence establishing that between 1989 and 1998, Howell, the lead defendant, and others, operated a conspiracy to sell heroin, cocaine, and crack in Baltimore. ECF 910, ¶¶ 19-25. Cheese was a lieutenant in the DTO. *Id.* ¶ 39. But, he claims that he did not join the conspiracy until 1997, about 18 months before it ended. *See* ECF 903 at 3; ECF 910, ¶¶ 36, 39.

Howell bought cocaine in New York and, with the help of codefendant Clarence Hicks,[4] he transported the drugs to Baltimore. ECF 910, ¶ 42. Cheese assisted Hicks with cooking the

---

[3] Judge Legg's Chambers file contained a copy of Cheese's Presentence Report. Given the age of the case, I could not determine if it had previously been docketed. Therefore, I submitted it for docketing, under seal, as ECF 910.

[4] Hicks sustained a nonfatal gunshot wound during the conspiracy. ECF 910, ¶ 37.

3

powder cocaine into crack and packaging it for sale. *Id.* ¶ 43. Additionally, Cheese co-managed one of the primary locations where drugs were sold, in the 1200 block of Urban Way. *Id.* ¶ 39.

The drug shop operated 24 hours a day, in two shifts. *Id.* ¶ 39. After the murder of Cheese's brother, who was known as "Smiley," Cheese ran both shifts with the help of codefendant Owen Robinson. *Id.* ¶ 48.

The jury returned its verdict on November 23, 1999. ECF 356. Cheese was found guilty of drug conspiracy (Count Three) and two counts of unlawful possession of a firearm (Counts Seven and Eight). He was found not guilty of Count Eleven (felon in possession). ECF 910, ¶ 2.

Notably, the jury was not asked to make any findings as to drug quantity. *See* ECF 356. This is because the trial predated the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court ruled: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490; *see also Alleyne v. United States*, 570 U.S. 99, 115-16 (2013) (holding that facts that increase the mandatory minimum of the offense must be submitted to a jury and found beyond a reasonable doubt).

Following *Apprendi*, "in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.*, charged in the indictment and proved to the jury beyond a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (en banc) (footnote omitted). But, at the relevant time, the determination of narcotics quantity was a matter for the sentencing judge. *See, e.g.*, *United States v. Williams*, 152 F.3d 294, 300-01 (4th Cir. 1998). Moreover, a sentencing judge was entitled to adopt a recommendation in a PSR as to a finding of drug quantity, "'without . . .

4

specific inquiry or explanation,'" in the absence of an objection to the PSR's recommendation. *Id.* at 301 (citation omitted)

Sentencing was held on March 14, 2000. *See* Docket. At sentencing, Judge Legg adopted the factual findings and advisory sentencing guideline calculations ("Guidelines" or "U.S.S.G.") in the Presentence Report. *See* ECF 903-1 (Transcript) at 2, Tr. 5. The Court found that more than 1.5 kilograms of crack cocaine were reasonably foreseeable to Cheese.

Ordinarily, the base offense level would have been 38 under § 2D1.1(c)(1), based on 1.5 kilograms of cocaine base. ECF 910, ¶ 72. However, the PSR determined that Petitioner's base offense level was 43 under U.S.S.G. § 2A1.1(a), the Guideline for murder, pursuant to § 2D1.1(d)(1), because of the murder of James Brown, committed by codefendant Johnson. *See* ECF 903-1 at 2-3, Tr. 5, 7-11; ECF 903-2 (Statement of Reasons); ECF 910, ¶ 73.[5] Section 2D1.1(d)(1) provides: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial and maritime jurisdiction of the United States, apply § 2A1.1(a) (First Degree Murder)."

A three-level upward adjustment was applied under § 3B1.1(b) for Petitioner's role as a manager or supervisor in a drug organization with at least five participants. ECF 910, ¶ 75. An additional two-level upward adjustment was applied under § 3C1.1 for obstruction of justice, because the government claimed that Cheese attempted to have potential witnesses killed prior to and while being detained. ECF 910, ¶ 76. As a result, Petitioner's final offense level equated to 48. However, 43 is the highest possible offense level under the Guidelines. Therefore, the final

---

[5] Johnson was also charged in Count 18 with the fatal shooting of 21-year-old Troy Nelson. ECF 910, ¶ 37. But, he was acquitted of that charge. *Id.* ¶ 38.

offense level was reduced to 43.  ECF 910, ¶ 78; *see also* U.S.S.G. Chapter 5, Part A, App. Note 2 ("An offense level of more than 43 is to be treated as an offense level of 43.").

Cheese had a criminal history category of VI because he had 15 criminal history points: 11 points for four drug offenses committed when he was between the ages of 18 and 27;[6] 2 points for an "escape" conviction (based on his failure to return to a halfway house); and 2 points for committing the underlying federal offenses less than two years after being released from custody. *See* ECF 910, ¶¶ 121, 122.

Judge Legg agreed that "the intermediate computations found in ¶¶ 72 through 80 of the PSR calculating the offense level, and in the criminal history computation section . . . [were] irrelevant because they do not contribute to the ultimate sentence." ECF 903-1 at 2, Tr. 5.  As he explained, "[b]ecause of the notice of enhanced sentence that the government filed pretrial, and because of Mr. Cheese's [prior] convictions, the sentence that must be imposed is a life sentence." *Id.* at 1, 2, Tr. 4-5.

For Count Three, based on the § 851 Notice and the Court's drug quantity finding, the statutory penalty increased to a mandatory life sentence, rather than zero to 30 years.  *See* ECF 903 at 4 (citing 21 U.S.C. § 841(b)(1)(A) (1997)); *see also* ECF 910, § 137.  And, the Guidelines called for a sentence of life imprisonment. ECF 910, ¶ 139.  As to Counts Seven and Eight, Cheese qualified as an armed career criminal under 18 U.S.C. § 924(e).  ECF 910, ¶ 138.  Therefore, he faced a mandatory minimum sentence of 15 years and a maximum sentence of life imprisonment, under 18 U.S.C. § 924(e)(1).  *Id.*

---

[6] In fact, Cheese had five prior drug-trafficking convictions. ECF 910, ¶¶ 83, 90, 103, 106, 110.  But, the offense in ¶ 90 did not score points.  He also had a conviction for drug possession. *Id.* ¶ 98.  It did not score points. *Id.*

6

The PSR described a "bloody feud" between the Nickel Boys and a rival drug organization. *Id.* ¶ 49. The mother of James Brown, a murder victim, spoke at Cheese's sentencing. She recounted the pain of her loss. *See* ECF 903-1 at 2, Tr. 7-10. But, the government advised the Court that Cheese "was not the individual that the testimony established was the actual shooter" of Mr. Brown. ECF 903-1 at 3, Tr. 10. Nevertheless, the government told Judge Legg that Cheese was "no less culpable" because he "produced the money that was paid to Mr. Johnson in recompense for the murder . . . ." *Id.*

Given the mandatory nature of Cheese's sentence, defense counsel "opted not to challenge the Guidelines in this particular matter because [he] concluded based on 21 [U.S.C. §] 841 that it would be fruitless. . . ." *See* ECF 903-1 at 2, Tr. 6. Noting that "it's the worst kept secret in the courtroom that Mr. Cheese is going to get a life sentence," defense counsel did not offer any mitigation evidence in support of a lesser sentence. ECF 903-1 at 3, Tr. 11.

Judge Legg sentenced Mr. Cheese to concurrent life sentences as to Counts Three, Seven, and Eight. ECF 420 (Judgment). In the Statement of Reasons, the Court wrote as the reason for the sentence: "MANDATORY LIFE." *See* ECF 903-2 (Statement of Reasons).

On direct appeal, the defendants argued, *inter alia*, that their sentences were invalid under *Apprendi*, because the amount of narcotics attributable to them had not been alleged in the indictment and determined beyond a reasonable doubt by the jury. Because no defendant had raised this argument in the district court (given that *Apprendi* had not been decided at that time), the Fourth Circuit applied a plain error standard of review. It said:

> Because Appellants did not raise these challenges to their convictions and sentences before the district court, they may only do so on appeal if they can demonstrate plain error. Consequently, in order to prevail on appeal Appellants must demonstrate that: 1) their indictment does not include the specific threshold drug quantities necessary for conviction under the aggravated drug trafficking offenses in § 841(b)(1)(A), (B); 2) their resulting sentences are in excess of the

7

statutory maximum otherwise available under § 841(b)(1)(C); 3) sentencing in this manner affected their substantial rights; and 4) this court should notice that error.

*Johnson*, *supra*, 26 F. App'x at 115-16 (internal citations and footnote omitted).  As "a threshold matter," the Court observed that the "indictment [did] not identify the drug quantities involved," thereby satisfying the first condition of its plain error analysis.  *Id.* at 116.

As to Cheese, the Fourth Circuit noted that he received a sentence for Count Three "in excess of the maximum applicable . . . under § 841(b)(1)(C) . . . ." *Id.*  The Court characterized the sentence as "erroneous," *id.* at 117, but it determined that Cheese's "substantial rights" were not affected because a mandatory life sentence was required under the Guidelines and because Cheese received life sentences for the firearms offenses.  *Id.*  Therefore, the Fourth Circuit affirmed Cheese's conviction and sentence.  Cheese did not seek review of the Fourth Circuit's decision in the Supreme Court.

Judge Legg subsequently denied Cheese's motion for post-conviction relief under 28 U.S.C. § 2255.  *See* ECF 553; ECF 554.  Cheese's appeal from that decision was dismissed.  *See United States v. Cheese*, 177 Fed. App'x 316 (4th Cir. 2006).  Thereafter, Cheese filed a motion for reduction of sentence, pursuant to 18 U.S.C. § 3582(c)(2).  ECF 615.[7]  Judge Legg denied that motion, *see* ECF 660; ECF 671; ECF 699, and his ruling was affirmed on appeal.  *See* ECF 747; *United States v. Cheese*, 384 Fed. App'x 245 (4th Cir. 2010) (per curiam).

Cheese filed several other motions.  They include a "Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)" (ECF 777); a "Motion for the Clarification Regarding the Courts Order/Reasoning for Denying Petitioners [sic] Motion to Suppress Evidence seized at 1215 Sugarwood Circle and the Courts [sic] finding Existence of Probable cause to believe the Vehicle

---

[7] Electronic access begins with ECF 615 on March 10, 2008.

8

linked to Petitioners was Forfeitable Contraband" (ECF 779); another "Motion for Clarification" (ECF 794); and a "Status Motion" (ECF 800). By then, the case was transferred to me. I denied those motions in a Memorandum and Order of April 10, 2013. ECF 816; ECF 817.

## II.     The Fair Sentencing Act and The First Step Act

### A.

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, a district court may modify a previously imposed sentence when modification is "expressly permitted by statute. . . ." 18 U.S.C. § 3582(c)(1)(B). *See Jackson*, 952 F.3d at 495. Section 3582(c)(1)(B) provides: "The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – ... (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute...."

Of relevance here, modification is permitted for a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. . . ." 18 U.S.C. § 3582(c)(2); *see United States v. Smalls*, 720 F.3d 193, 195-96 (4th Cir. 2013). And, the 2018 FSA expressly authorizes the modification of a previously imposed sentence for a defendant affected by earlier statutory changes to the penalty ranges for cocaine base (*i.e.*, "crack" cocaine) offenses. *See Jackson*, 952 F.3d at 495. Indeed, it is clear that Section 404 of the 2018 FSA "makes retroactive certain provisions" of the Fair Sentencing Act of 2010 ("2010 FSA"), Pub. L. No. 111-220, 124 Stat. 2372 (2010). *See Jackson*, 952 F.3d at 495; *see also United States v. Woodson*, ___ F.3d ___, 2020 WL 3443925, at *1 (4th Cir. June 24, 2020); *United States v. Chambers*, 956 F.3d 667, 669-70 (4th Cir. 2020); *United States v. Gravatt*,

953 F.3d 258, 260 (4th Cir. 2020); *United States v. Wirsing*, 943 F.3d 175, 177-180 (4th Cir. 2019).

The 2010 FSA took effect on August 3, 2010. It was enacted "in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses." *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013); *see Gravatt*, 953 F.3d at 260. The 2010 FSA "reduced the statutory penalties for cocaine base offenses" in order to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016); *see Dorsey v. United States*, 567 U.S. 260, 264 (2012); *Black*, 737 F.3d at 282.

Of relevance here, the 2010 FSA increased the drug quantities that trigger mandatory minimum sentences for crack cocaine. *Dorsey*, 567 U.S. at 269; *Woodson*, 2020 WL 3443925, at *1; *Gravatt*, 953 F.3d at 260. Specifically, the crack-to-powder cocaine disparity was reduced from 100-to-1 to 18-to-1. *Dorsey*, 567 U.S. at 269; *Gravatt*, 953 F.3d at 260; *Black*, 737 F.3d at 282.

Under Section 2 of the 2010 FSA, the sentencing range for possession with intent to distribute less than 28 grams of cocaine base is zero to 20 years imprisonment; the sentencing range for possession with the intent to distribute more than 28 grams but less than 280 grams of cocaine base is five to 40 years of imprisonment; and the sentencing range for possession with the intent to distribute more than 280 grams of cocaine base is ten years to life imprisonment. Section 3 of the Fair Sentencing Act, which is not at issue here, eliminated the mandatory minimum sentence for simple possession. Therefore, under the 2010 FSA, Congress increased the threshold quantities needed to trigger mandatory sentencing ranges associated with crack cocaine offenses. *See Dorsey*, 567 U.S. at 269.

Thereafter, the Sentencing Commission amended the Guidelines to conform to the statute. *Gravatt*, 953 F.3d at 260. However, the 2010 FSA did "not apply its changes retroactively," so as to "alter statutory minimum terms of imprisonment" that were previously in effect. *Id.* But, with the enactment in 2018 of the First Step Act, Congress rectified the inequity. *Id.*

Section 404(b) of the 2018 FSA "renders these reforms retroactive by authorizing a district court 'that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed.'" *Woodson*, 2020 WL 3443925, at *1. In other words, under Section 404 of the Act, the provisions of the 2010 FSA apply retroactively to defendants who were sentenced prior to August 3, 2010, *i.e.*, the effective date of the 2010 FSA. *United States v. Charles*, 932 F.3d 153, 162 (4th Cir. 2019).

Section 404 of the 2018 FSA provides:

**SEC. 404. Application of Fair Sentencing Act.**

(a) Definition of covered offense.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

The procedural framework that applies to motions under Section 404 is found in 18 U.S.C. § 3582(c)(1)(B). *See Wirsing*, 943 F.3d at 183 (concluding that § 3582(c)(1)(B) is "the appropriate vehicle" for a 2018 FSA motion). Thus, eligible defendants may seek to reduce their sentences, pursuant to 18 U.S.C. § 3582(c)(1)(B).

Of relevance here, the 2018 FSA permits, but does not compel, a district judge to reduce a defendant's sentence, as if the 2010 FSA were in effect when the defendant committed the offense. Section 404(c) of the Act expressly provides that any relief is discretionary. ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *see Gravatt,* 953 F.3d at 261; *United States v. Venable*, 943 F.3d 187, 194, n.10 (4th Cir. 2019); *cf. United States v. Sellers*, 776 F. App'x 143 (4th Cir. 2019) (per curiam); *see also Chavez-Meza v. United States*, ___ U.S. ___, 138 S. Ct. 1959, 1966 (2018) (stating that at a resentencing based on a change in the Guidelines range, the judge need not impose a sentence proportional to the sentence imposed under the earlier Guidelines range); *Jackson*, 952 F.3d at 502 (noting that the district court "was not obligated" to reduce the sentence, nor must a reduction based on revised guidelines correspond in proportion to an earlier guidelines sentence).

**B.**

Section 404 of the 2018 FSA makes the provisions of the 2010 FSA available to a defendant who was sentenced before August 3, 2010. Therefore, the threshold crack-cocaine quantities of the 2010 FSA apply to Cheese, because he was sentenced in 2000, under the pre-amendment statutory framework.

Cheese was charged with conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846. At that time, 21 U.S.C. § 841(b)(1)(A) provided, in part: "[I]n the case of a violation of subsection (a) of this section involving –

>  (i)   1 kilogram or more of a mixture or substance containing a detectable amount of heroin;
>
>  (ii)  5 kilograms or more of a mixture or substance containing a detectable amount of [cocaine]; [or]
>
>  (iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;
>
>  ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life ….

With the passage of the 2010 FSA, the quantity of cocaine base necessary to trigger § 841(b)(1)(A)(iii) was increased from 50 grams to 280 grams. *Dorsey*, 567 U.S. at 264. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3" of the 2010 FSA.

The government posits that Cheese was not convicted of a "covered offense" because the quantity of cocaine base that Judge Legg attributed to him – 1.5 kilograms – would have resulted in the same statutory penalty both before and after passage of the 2018 FSA. ECF 905 at 6 (citing ECF 910, ¶ 72). Nevertheless, the government acknowledges that its position is at odds with the Fourth Circuit's recent decision in *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019).

In *Wirsing*, the Fourth Circuit rejected the government's contention that courts should look to drug quantity when making an eligibility determination. *Wirsing*, 943 F.3d at 185. The defendant in *Wirsing* was eligible for relief because he committed a violation of 21 U.S.C. § 841(b)(1) before August 3, 2010, and the statutory penalties for the offense were modified by Section 2 of the 2010 FSA. *Id.* at 186. The Fourth Circuit expressly ruled in *Wirsing*, *id.* at 186: "All defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and were not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act."

13

Cheese's drug conspiracy conviction clearly is a "covered offense" under Section 404 of the 2018 FSA. Thus, he is eligible for relief. *See Woodson*, 2020 WL 3443925, at *1, 4 (concluding that when 2010 FSA changed the quantities of crack cocaine to which § 841(b)(1)(C) applies, it modified the statutory penalties of that subsection, and the change constitutes a "covered offense"); *Gravatt*, 953 F.3d at 262 (discussing the "threshold requirement of a 'covered offense'"); *Peters*, 843 F.3d at 575 (stating that the 2010 FSA "reduced the statutory penalties for cocaine base offenses"); *see*, *e.g.*, *United States v. Jacobs*, CCB-01-050, ECF 252 (D. Md. Aug. 30, 2019) ("[E]ligibility for relief under the First Step Act is to be determined by the statutory offense of conviction, rather than relevant conduct or determination of what the government 'would have charged.'"); *United States v. Bass*, RDB-08-0496, ECF 132 (D. Md. Oct. 2, 2019).

The jury did not determine the quantity of drugs attributable to Cheese. Therefore, the statutory range with respect to Count Three is 0 to 30 years, notwithstanding the § 851 Notice. *See* 21 U.S.C. § 841(b)(1)(C). And, because Count Three qualifies as a covered offense, the Court also has the authority to reduce the defendant's sentences for Counts Seven and Eight. *See Graavtt*, 953 F.3d 258 (concluding that so long as there is one covered offense, the court may resentence); *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017); *see also United States v. Pratt*, 915 F.3d 266, 275 (4th Cir. 2019); *United States v. Alston*, 722 F.3d 603, 606-07 (4th Cir. 2013); *United States v. Harmer*, CCB-03-0216, ECF 113 (D. Md. Oct. 9, 2019).[8]

In an effort to salvage its opposition, the government states, ECF 905 at 7: "While this Court may be constrained by the *Wirsing* decision from finding Petitioner ineligible, the Court can deny relief as a matter of discretion." I turn to that issue.

---

[8] Counts Three, Seven, and Eight were grouped under U.S.S.G. § 3B1.2. Count Three was the most serious of the convictions. As the defense puts it, the sentences for Counts Seven and Eight were "driven" by the penalty for Count Three. ECF 903 at 13.

### III.     Section 3553(a)

In exercising my discretion, I must consider the factors under § 3553(a) of 18 U.S.C.

The defendant was born in December 1964, and is now 55 years old. He was arrested on April 9, 1998, and has been held continuously since that date.

The defendant presented at sentencing with multiple prior convictions. But, of import here, there was no violence associated with the prior offenses. They consisted largely of low-level drug distribution offenses. *See* ECF 910, ¶¶ 90-118. And, two of the prior convictions occurred when the defendant was an older teenager. *See id.* ¶¶ 90, 98. Moreover, the longest sentences the defendant had ever received were meted out in 1992: four years for a violation of probation for heroin distribution, *id.* ¶ 104, and a concurrent four-year sentence for possession of marijuana with intent to distribute. *Id.* ¶ 110. And, given that there is parole in Maryland, the defendant served a little more than three years of the four-year sentences. *See id.*

The Court cannot ignore the violence associated with the DTO, of which the defendant was a part. Although the government conceded at defendant's sentencing that he did not shoot Mr. Brown, the government maintained that defendant was involved in the shooting and was equally culpable. *See* ECF 903-1 at 2.

The defense has traced the sentences of the codefendants – those who pleaded guilty and those who went to trial. The defense emphasizes the government's punitive use of the § 851 Notice as to those defendants who went to trial, noting that it was withdrawn for defendants who pleaded guilty. ECF 906 at 6. And, it points out that the defendants who pleaded guilty ultimately received sentences ranging from 19 months to 168 months of incarceration. *Id.*

As defendant puts it, in exchange for exercising his constitutional right to a jury trial, *id.* at 5, he received an unduly harsh sentence. *Id.* He posits that there is "a gross disparity" in sentences, *id.*, and asserts that his "life sentence represents an excessive trial penalty." *Id.* at 6.

Significantly, out of all the defendants, only Cheese, Johnson, and Kendall Schuyler remain incarcerated. ECF 903 at 18-19. And, Schuyler is due to be released within a few months. *Id.* at 19.[9]

The government contends in its opposition to the Motion that several murders and attempted murders occurred during the course of the drug conspiracy here, "as a result of an ongoing turf war with rival gangs." ECF 905 at 2 n.2; *see* ECF 910, ¶¶ 27-30, 32-33, 35-37, 46-47, 51. And, the government asserts that Cheese "personally ordered the killing of suspected informants both prior to and during his incarceration." ECF 905 at 2 n.2; *see also* ECF 910, ¶ 61.

However, the defense vigorously disputes the allegations as unproven. ECF 906 at 6. Cheese points out that the allegations were not determined by a jury and "went untested at sentencing due to the mandatory life sentence called for by the § 851 enhancement." *Id.* Moreover, Hicks, one of the persons the defendant supposedly intended to kill, has submitted a Declaration (ECF 903-3), asserting that he is "certain" that the defendant never sought to harm him. *Id.*

In addition, on the basis of the disposition of other comparable cases in this District, the defense contends that the sentence here was unduly harsh. It points out that the government does

---

[9] The sentences of several defendants were reduced for various reasons, such as amendments to the Guidelines. The lead defendant, Howell, initially received a sentence of 276 months (ECF 401), but it was reduced to 168 months, ECF 482, and then to 140 months, under Amendment 706. *See* ECF 744. Johnson was convicted of murder and was sentenced to life plus 35 years. Schuyler was convicted of Counts 3 and 16. He initially received a sentence of life plus 60 months. ECF 431; ECF 518. But, the Supreme Court vacated the sentence. ECF 575. He later received a total sentence of 25 years. ECF 597. Cheese was unsuccessful in his earlier and repeated efforts to reduce his sentence under § 3582(c), because of the murder cross reference. *See* ECF 660; ECF 671; ECF 699; ECF 816; ECF 817.

not dispute that other defendants in other cases, convicted of "equally serious conduct," and without the defendant's "track record of success," have received sentences of around 25 years. ECF 906 at 5.

The Court has reviewed sentences imposed in other drug cases in this District, as cited by defendant. *See* ECF 903 at 20-22.[10] For example, in *United States v. Floyd*, CCB-16-597, Floyd was one of several defendants convicted after a 25-day trial. *See id.*, ECF 477; ECF 491. In particular, he was convicted of a racketeering conspiracy that included murders and drug conspiracy. Floyd was not the shooter. His offense level and criminal history category called for a life sentence. However, Judge Blake imposed a total sentence of 360 months' imprisonment. *Id.*, ECF 691.

The government concedes that the defendant's conduct in the Bureau of Prisons ("BOP") "has been excellent." ECF 905 at 8 n.7. In the approximately 22 years of Cheese's incarceration, he has incurred only one minor infraction. ECF 903-5. That is quite commendable. Moreover, Cheese has continuously endeavored to improve himself. He has completed numerous educational and vocational programs, including a data entry apprenticeship; a course in Microsoft Office; parenting courses; courses on conflict resolution, anger management, Spanish, Algebra, CPR training, and others. ECF 903-6 at 1-2; ECF 903-7 at 2-3. He has also completed a drug education program. ECF 903-7 at 3. And, he has obtained a certification as a personal trainer. ECF 903-8.

---

[10] Defendant did not reference the case of *United States v. Whisonant, et al.*, ELH-17-191. There, three of the defendants pleaded guilty to conspiracy to distribute heroin and to discharging a firearm resulting in death, during and in relation to a drug trafficking crime, or to possession of a firearm in furtherance of a drug trafficking crime. One defendant received a total sentence of 360 months imprisonment, another received a sentence of 420 months, and still another received a sentence of 480 months of incarceration. *See id.*

Moreover, the defendant has received positive performance evaluations from BOP supervisors for his work through UNICOR. ECF 903-7 at 3-5, 8-9. For example, in 2015, one supervisor praised the defendant's "outstanding work ethic." ECF 903-9.

It is also noteworthy that the Court has received many letters from defendant's fellow inmates, lauding his positive role at FCI Hazelton. *See* ECF 903-10 to ECF 903-19. The defendant has also strived to maintain ties with his two daughters. *See* ECF 903-20, ECF 903-21.

In addition, the Court is mindful of the fact that the defendant has experienced several serious health challenges. *See* ECF 903 at 27. And, given that the defendant is now 55 years old, he poses a reduced risk of recidivism. *See* ECF 903 at 26.

Perhaps most significant, the defendant has expressed remorse for his conduct. ECF 903-26. He states, in part, *id.* at 1: "I have come to understand the wrongs I've donw [sic] and wish there was some way I could take back my actions. I sincerely apologize . . . I have prayed to my God Jehovah and asked for forgiveness, now I ask the courts to accept my deepest apologies for the crimes I committed."

## IV. Conclusion

The Court has carefully considered all of the arguments of both sides. Defendant's role in the DTO was not minor. *See* ECF 910, ¶¶ 39, 75. The DTO was a violent one, and the defendant was implicated in the violence. *See* ECF 905 at 12-13. That said, a reduction in the sentence is amply warranted here, as the discussion above indicates.

One of the purposes of sentencing is rehabilitation. Cheese has been a model prisoner who has made every effort to turn his life around, and the Court applauds his efforts. Only time will truly tell if the goal of rehabilitation has been achieved here. But, the defendant's post-sentencing conduct in the BOP certainly bodes well for a positive outcome.

Therefore, I shall reduce the defendant's sentence for Counts Three, Seven, and Eight to concurrent terms of 28 years (336 months), with credit for time served since April 9, 1998. In addition, I shall place the defendant on a period of supervised release for ten years for Count Three, with concurrent terms of supervised release of five years for Counts Seven and Eight. I shall adopt the mandatory and standard conditions of supervision, as set forth by the probation office and this Court.

A revised Judgment and Commitment Order shall issue.


Date:   July 2, 2020                                   /s/
                                            Ellen L. Hollander
                                            United States District Judge